UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARBARA A. ANDERSON,

   Plaintiff,

v.             CASE NO. 8:11-cv-234-T-24MAP

MICHAEL J. ASTRUE,
Commissioner of Social Security,

   Defendant.
_____/

## REPORT AND RECOMMENDATION

  Pursuant to 42 U.S.C. §§405(g) and 1383(c)(3), Plaintiff seeks review of the Commissioner's decision denying her claims for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").[1] While Plaintiff's petition sets out three issues, only one requires discussion – whether the Commissioner followed the appropriate law and fully developed the record in determining Plaintiff failed to comply with medical treatment.[2] Because I find the ALJ failed to fully develop the record on this issue, I recommend the district judge remand the matter for further administrative proceedings consistent with my report and

---

[1] The district judge referred this matter to me for a report and recommendation. *See* Local Rule 6.01(c)(21).

[2] The other two issues raised by Plaintiff are the Administrative Law Judge's ("ALJ") alleged failure to (1) properly consider the effects of congestive heart failure ("CHF") and mediastinal lymphadenopathy in reaching a Residual Functional Capacity ("RFC") and (2) properly consider Plaintiff's pain and other symptoms.

recommendation.

*A. Background*

Plaintiff, who was fifty years old at the time of her administrative hearing on January 29, 2009, has past work experience as a housekeeper. She quit highschool in the eleventh grade and never received her GED. Plaintiff filed for a period of disability, DIB, and SSI on July 26, 2006, alleging a disability onset date of January 1, 2006, as to period of disability and DIB and March 1, 2005, as to SSI, due to rheumatoid arthritis ("RA"), congestive heart failure ("CHF"), mediastinal lymphadenopathy, and degenerative diskspace at C5-C6 and C6-C7.[3] All claims were denied.

The ALJ found Plaintiff suffered from the following severe impairments: RA, degenerative changes of the cervical spine, CHF, and mediastinal lymphadenopathy (R. 27). While the ALJ did find that the Plaintiff meets the insured status requirements of the Social Security Act ("SSA") through December 31, 2012, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed requirements in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R.26-27). Furthermore, upon consideration of the entire record, the ALJ determined that Plaintiff has a RFC to perform the full range of light work as defined in 20 C.F.R. 404.1567(b)

---

[3] The record reflects previous disability applications by Plaintiff. On July 18, 2005, Plaintiff filed applications for period of disability, DIB, and SSI. Plaintiff's alleged onset date as to period of disability and DIB was January 28, 2003. Plaintiff's alleged onset date as to SSI was March 1, 2005. Upon denial of all claims at the initial level, Plaintiff did not request further review.

and 416.967(b).[4] Thus, the ALJ determined that Plaintiff was capable of performing her past relevant work as a housekeeper, as the work does not require Plaintiff to perform any work related activities.

*B. Standard of Review*

To be entitled to disability insurance benefits a claimant must be unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is

---

[4] 20 C.F.R. § 404.1567(b) defines "light work" as:
    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. *See* C.F.R. §416.967(b) for SSI.

disabled. 20 C.F.R. §§404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§404.1520(f), 416.920(f).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence" consisting of "relevant evidence as a reasonable person would accept as adequate to support a conclusion" exists. 42 U.S.C. § 405(g); *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Further, the Commissioner's failure to apply the correct law, or to give the reviewing court sufficient

reasoning for determining that he has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066; *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (remanding for clarification).

*C. Discussion*

Plaintiff contends that the ALJ erred by failing to consider the reasons why she failed to follow her physician's prescribed treatment. She claims she could not afford her medications for RA. Defendant counters that her allegations of financial difficulty do not excuse noncompliance. I disagree.

The regulations do state that a claimant's refusal to follow or noncompliance with a course of treatment, without good cause, precludes a finding of disability. Good cause for a claimant's noncompliance may exist in the following situations: the prescribed treatment contravenes religious beliefs, treatment is too risky, treatment involves surgery where prior surgery proved unsuccessful, treatment involves amputation of an extremity, or treatment involves cataract surgery to an eye where the other eye's vision is severely impaired. 20 C.F.R. §416.930(b). Additionally, the Eleventh Circuit has recognized an additional exception where the plaintiff cannot afford treatment or can find no way of obtaining it. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (citing *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)). If one's disability can be cured by treatment or compliance, yet such treatment is not financially available, the condition is

disabling in fact and continues to be disabling in law. *See Dawkins* at 1213.[5]

A distinguishing fact between *Dawkins* and the instant case is that the claimant in *Dawkins* testified at the administrative hearing that the reason for failing to take her medication was because she could not afford it. The Plaintiff here testified at the administrative hearing that she did not have insurance during certain periods of time; however, the ALJ failed to further question Plaintiff as to her financial situation or to elicit any potential good cause reason for her noncompliance. The ALJ's support for denial of Plaintiff's claim is set forth below.

In reaching a decision that Plaintiff is not disabled, the ALJ found Plaintiff to be "not entirely credible" in light of the treating physicians' reports, findings made upon examination, and the degree of treatment required (R. 32). The ALJ notes that no examining or treating physician assessed claimant with limitations to walk only fifty to sixty feet or to sit longer than five minutes, as Plaintiff advances as true. *Id.* In addition to no treating or examining physician assessing Plaintiff with these limitations, the ALJ notes that no physician assessed these limitations as resulting in Plaintiff being disabled

---

[5] The claimant in *Dawkins* testified at the administrative hearing that she was unable to take her prescribed medication because she could not always afford to refill her prescription. *Dawkins* at 1213. In reversing the district court's opinion, the Eleventh Circuit concluded that because the ALJ's finding that claimant was not disabled was "inextricably tied to the finding of noncompliance," the ALJ erred by failing to consider the claimant's ability to afford the prescribed medical treatment. *Id*. at 1214. It is this Eleventh Circuit exception that Plaintiff relies upon.

for twelve months as statutorily required for a finding of disability.[6] *Id.* As additional support, and encompassing the bulk of the text within the decision, the ALJ reasons that as Plaintiff was not always in compliance with her prescribed medical treatments and appointments, her credibility is diminished..

In support of his finding of noncompliance, the ALJ cites a May 2, 2005, visit with rheumatologist Dr. Torres. During this visit, Plaintiff reported that she had run out of Prednisone a week prior to the visit and that she also did not have any Humira.[7] Dr. Torres' notations reflect that the Plaintiff failed to keep her appointments despite having no medication, that Dr. Torres was still not in receipt of laboratory tests, and that she denied severe headaches, acute visual symptoms, lymphadenopathy, thyroid disease, chest pain, shortness of breath, palpitations, PND, orthopnea, abdominal pain, nausea, vomiting, diarrhea, dysuria, and leg edema[8] (R. 32, 573). However, in a prior visit the doctor noted that he was treating the Plaintiff along with Dr. Fraser because he was not covered under her insurance (R. 583). In another previous May 2, 2005, visit, Dr. Torres

---

[6] While this is true, one of Plaintiff's treating physicians, Dr. Sankoorikl, notes on September 26, 2008, that Plaintiff was unable to work for six months due to RA and completed a disability form on her behalf. (R. 33, 216).

[7] Prednisone and Humira were prescribed medications by Plaintiff's treating physicians to address Plaintiff's RA.

[8] Within the same May 2, 2005, examination report Dr. Torres notes Plaintiff has an antalgic gait, decreased rotation in her left shoulder, decreased extension of her elbows, synovitus of the left elbow, wrists, MCPs, PIPs, and both ankles (R. 573). His conclusion was that Plaintiff's RA was "not controlled," (*Id.*)

noted that the Plaintiff would be contacted once he received a response from her insurance company regarding its approval of Humira (R. 579). This would explain Plaintiff's noncompliance with laboratory tests and follow up appointments. Moreover, Plaintiff called Dr. Torres' office on May 11, 2005, requesting Prednisone until her Humira arrived[9] (R. 567).

      The ALJ also refers to a March 17, 2006, visit when Plaintiff was treated at the Bayfront Medical Center Emergency Room for shortness of breath and left the emergency room against medical advisement(R. 32). However, in a August 20, 2005, preliminary report following an August 19, 2005, admittance to Bayfront Medical Center, Dr. Cherukuri notes that Plaintiff has been off Humira for three months because Plaintiff ran out of Medicaid (R. 220). In notes dated July 7, 2005, by the St. Petersburg Arthritis Center, it is indicated that Plaintiff's insurance with Amerigroup was terminated on May 31, 2005 (R. 567). Subsequent notations indicate that she did not keep appointments for October 26, 2005, November 1, 2005, February 17, 2006, and June 22, 2006 (R. 367). As these notations establish, the record is replete with evidence that Plaintiff was without medical insurance for periods of time. Several of her physicians made notations that she was not on RA medication because it was not covered by her insurance. In addition, the March 17, 2006, hospitalization was for shortness of breath, not RA. The ALJ had an obligation to inquire as to why the Plaintiff failed to comply with medical treatment as the

---

[9] An August 5, 2005, visit with Dr. Serag notes that Humira was not prescribed because the patient did not have insurance for it (R. 603).

record would suggest the reason is she was without medical coverage. While the ALF

affirmed at the hearing that the Plaintiff did not have insurance coverage, he did not

question her further as to why.

Lastly, the ALJ notes that earning records for 2006 and 2007 reflect the Plaintiff

worked and she testified that she worked during 2008. However, she also testified that

she could only clean for a few minutes without a break (R. 38), could only work a total of

five to six hours because it was all that she could handle (R.39-40), was in and out of

work due to RA flare-ups (R.40), and she was dropping things due to a lack of grip in her

hands (R. 42-43). Furthermore, the ALJ found that the Plaintiff had not engaged in

substantial gainful activity since March 1, 2005 (R.26).

While the ALJ sets forth multiple grounds for his decision in theory, in actuality,

the ALJ's opinion relied primarily on Plaintiff's noncompliance, a finding that is not

supported by substantial evidence. The colloquy between the ALJ and the Plaintiff at the

administrative hearing was as follows:

> Q: You don't have health insurance, right?
> A: No, I do not.
> Q: That's why you've just been going to Johnny Ruth
> (phonetic)?
> A: Ruth, yes.
> Q: Any you go to Bayfront and they–
> A: Yes.
> Q: -- help you --
> A: Yes.
> Q: -- when you're having serious problems.
> A: Yeah.

(R. 45). The ALJ did not ask any additional questions pertaining to why Plaintiff did not

have insurance or if she failed to comply with prescribed medical treatment because she could not afford treatment. Plaintiff's record indicates sporadic compliance and the ALJ should have more fully inquired into the cause of Plaintiff's noncompliance.

It is well-established that the ALJ has a basic duty to develop a full and fair record. "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981). Furthermore, Social Security Ruling ("SSR") 82-59 provides that if a claimant fails to follow prescribed medical treatment and such treatment is expected to restore the ability to engage in substantial gainful activity, before a disability determination is made the claimant must be given notice of the issue and an opportunity to show justifiable cause for not following the treatment. SSR 96–7 precludes an ALJ's credibility assessment to be based on a failure to follow a treatment plan where the claimant has a good reason for the failure or infrequency of treatment. Poverty is such a reason. Under SSR 96–7p, an ALJ should consider whether a claimant has access to free treatment. According to the applicable law and regulations, it is clear that Plaintiff was prejudiced by the ALJ's failure to more fully develop the record as to why she failed to comply with medical treatment, as noncompliance due to poverty is a recognized exception, and it is this exception that Plaintiff raises on appeal. *See also*, *Zeigler v. Barnhart*, 310 F.Supp.2d 1221, 1225-26 (M.D. Fla. 2004) (reversing ALJ's credibility finding based on noncompliance because finding was on "shaky ground.").

*D. Conclusion*

After considering all the evidence, I conclude that the ALJ's ruling is not based upon substantial evidence. The record is not sufficiently developed to support a finding that noncompliance, without further inquiry, warrants dismissal of Plaintiff's claim.

For the reasons stated, it is hereby

RECOMMENDED:

1. The Plaintiff's complaint be remanded for further proceedings in accordance with this report and recommendation.

IT IS SO REPORTED in Tampa, Florida on February 3, 2012.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc: The Honorable Susan C. Bucklew
Counsel of Record